558 P.2d 947

**The STATE of Arizona, Appellee,**

v.

**William SPAIN, Jr., Appellant.**

**Nos. 2 CA–CR 787, 2 CA–CR 788–2.**

Court of Appeals of Arizona, Division 2.

Oct. 28, 1976.

Rehearing Denied Nov. 30, 1976.

Petition for Review Denied Jan. 4, 1977.

Bruce E. Babbitt, Atty. Gen. by William J. Schafer, III, and Georgia Butcher Ellexson, Asst. Attys. Gen., Phoenix, for appellee.

John M. Neis, Pima County Public Defender by Donald Jay Natoli, Jr., Asst. Public Defender, Tucson, for appellant.

OPINION

HOWARD, Chief Judge.

Appellant was convicted by a jury of armed robbery, armed burglary and assault with a deadly weapon and sentenced to concurrent terms of not less than fifteen nor more than twenty years in the Arizona State Prison.

The record shows that the victim, Alexander Woods, was asleep in his bedroom with the window open and was awakened by the barking of his dog. He heard a voice through the open window saying, "Don't move or I'll kill you." Woods looked up and saw a pistol coming through the screen of the window. He jumped up and reached for a lamp to use as a weapon but before he could throw it, two shots were fired. One hit him in the back and the other missed. Woods sat down on his bed abandoning any further thought of resistance. A person came through the window and put a .22 caliber pistol to his head asking him where the money was. Another individual had also entered the room through the window. Woods informed them that there was money laying on the snack bar in the kitchen. The person holding the .22 pistol turned to a third person who was either inside or outside the window and told Woods that they were going to get the money and that if he moved he would be killed. The two individuals who were inside the house went to get the money and when they returned demanded that Woods give them his billfold. A shotgun was held to Woods' head and one of the individuals stated, "I'm leaving. You kill him." Woods put his head down and hung onto the bed expecting to be shot. After about thirty seconds, when nothing had happened, Woods looked up and found he was alone. He was unable to see anything more than silhouettes and shadows because the room was dark. However, he did clearly see the hand on the .22 pistol and observed that the person holding the pistol was a Negro.

Appellant's fingerprints and palm prints were found on the inside screen and outside shutter of the bedroom window. Furthermore, there was testimony that it was im-

possible for the prints to be there unless the screen was first removed from the window. Appellant, who is black, did not testify at the trial.

Appellant claims it was error (1) for the trial court to deny his motion for a directed verdict based on the insufficiency of the evidence, (2) to deny his motion for mistrial based on prosecutorial misconduct, (3) to deny his motion for mistrial because of a reference to his photograph as a "mugshot", (4) to compel appellant to testify before the jury as to phrases uttered on the night of the crime since the order was violative of the full disclosure requirement set forth in Rule 15 of the Arizona Rules of Criminal procedure and violated his constitutional rights against self-incrimination.

## INSUFFICIENCY OF THE EVIDENCE

■ Appellant claims that the only evidence connecting him with the crime was the existence of his fingerprints on the bedroom window. He claims this evidence is insufficient to prove beyond a reasonable doubt that he committed the crimes or aided and abetted the others in the commission of the crime. We do not agree. This case is not unlike the case of *State v. Brady,* 2 Ariz.App. 210, 407 P.2d 399 (1965). There the defendant contended, as he does here, that the only evidence connecting him with the crime was the fingerprints. In holding the evidence sufficient the court stated:

> " . . . In the instant case the evidence showed that the fingerprints of defendant were not found in a place and under circumstances where they could have been reasonably made at a time other than the time of the commission of the offense. It is well established in our State that a crime may be proven by circumstantial evidence alone, and that fingerprints are a means of positive identification by which a defendant may be linked with the commission of the offense. [citation omitted]" 2 Ariz.App. at 213, 407 P.2d at 402.

As in *Brady, supra,* appellant's fingerprints were not found in a place and under circumstances where they could have been made at a time other than the time of the commission of the offense.

## PROSECUTORIAL MISCONDUCT

Appellant has cited to us four alleged instances of improper argument to the jury by the prosecutor. Considering the wide latitude allowed counsel in argument to the jury, *State v. Abney,* 103 Ariz. 294, 440 P.2d 914 (1968), we do not believe the argument was improper in three of the cited instances. During his rebuttal argument the prosecutor made the following statement:

> "I would like to start by saying first off, we may not know for sure I may not know for sure what William Spain did in that residence. I know he did one of those things that happened there."

Appellant's objection to the foregoing statement was sustained. He later moved for a mistrial which the court refused to grant.

■ In closing argument an attorney should never express his personal belief in the defendant's guilt or innocence. *State v. Abney,* supra. When the objection was sustained by the court, the prosecutor stated:

> "I think the *evidence* shows you, ladies and gentlemen, he did one of those things that happened that night . . .." (Emphasis added)

In its instructions to the jury the court told them that counsel's closing argument was not evidence and that the only evidence which they were to consider consisted of the testimony of the witnesses and exhibits. No further instructions were requested by appellant relative to the statement or arguments of counsel. We believe that the prosecutor's statement made to the jury after the objection was sustained and the instructions of the court sufficiently brought home to the jury the proposition that the opinion of counsel was to be entirely disregarded by them.

## TESTIMONY AS TO A "MUGSHOT"

On direct examination an identification technician for the Pima County Sheriff's Department testified that his duties were to take fingerprints and pictures of all prisoners booked into the jail. Under cross-exam-

ination by defense counsel he testified as to the procedures he followed in the instant case:

"I put his hands on the card and I took some mugshots of him. They are not developed at the jail. They are developed at the Tucson Police Department."

■■ Appellant contends that the testimony of the identification technician constituted prejudicial error. We do not agree. The introduction into evidence of mugshots or the mention of the fact that the defendant had mugshots taken prior to the arrest for the offense charged can be error when they infer that the defendant has a prior arrest record. *State v. Kelly*, 111 Ariz. 181, 526 P.2d 720 (1974). Here, the reference to the mugshot of the appellant was related solely to the offense charged and in no manner reflected any inference of a prior arrest record.

## VOICE IDENTIFICATION AT TRIAL

■■ At trial, appellant was ordered by the court to utter before the jury the words used the night of the crimes by the participants. The trial judge advised the jury that the uttering of the words at trial did not necessarily mean it was appellant who spoke those words at the time of the incident. After appellant read the words that were used, the victim testified that he was unable to identify appellant's voice as that of his assailant. Appellant claims two errors relative to the court's order. First he claims that the court's order resulted in a violation of Rule 15 of the Rules of Criminal Procedure. He also claims that it violated his rights against self-incrimination. Since the victim was unable to identify appellant as the one who spoke the words, we are unable to perceive how appellant was harmed by the court's order. In any event, Rule 15.1(a)(3) does not require a pretrial disclosure by the state of the fact that it intends to attempt an in-court identification of the defendant based upon voice comparison. The rules states that the state must disclose:

"The names and addresses of experts who have personally examined a defendant or any evidence in the particular case, together with the results of physical examinations and of scientific tests, experiments or comparisons, including all written reports or statements made by them in connection with the particular case."

The rule clearly pertains only to examinations, tests, experiments and comparisons which have already been completed, and not to the situation which occurred here. It is directed at expert testimony and is designed to give the defendant an opportunity to check the validity of the conclusions of an expert witness and to call such expert as his own witness or to have the evidence examined by his own independent expert witness. In *Schmerber v. California*, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966), the court stated:

"It is clear that the protection of the privilege reaches an accused's communications, whatever form they might take . . . . On the other hand, both federal and state courts have usually held that it offers no protection against compulsion to submit to fingerprinting, photographing, or measurements, to write or speak for identification, to appear in court, to stand, to assume a stance, to walk, or to make a particular gesture. The distinction which has emerged, often expressed in different ways, is that the privilege is a bar against compelling 'communications' or 'testimony,' but that compulsion which makes a suspect or accused the source of 'real or physical evidence' does not violate it." 86 S.Ct. at 1832.

In the later case of *United States v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), the court stated:

"We have no doubt that compelling the accused merely to exhibit his person for observation by a prosecution witness prior to trial involves no compulsion of the accused to give evidence having testimonial significance. It is compulsion of the accused to exhibit his physical characteristics, not compulsion to disclose any knowledge he might have. It is no different from compelling Schmerber to provide a blood sample or Holt to wear the

**756**

blouse, and, as in those instances, is not within the cover of the privilege. Similarly, compelling Wade to speak within hearing distance of the witnesses, even to utter words purportedly uttered by the robber, was not compulsion to utter statements of a 'testimonial' nature; he was required to use his voice as an identifying physical characteristic, not to speak his guilt. . . ." 87 S.Ct. at 1930.

In *State v. Lacoste,* 256 La. 697, 237 So.2d 871 (1970), the court ordered the defendant to utter the words "hurry up" for the purpose of voice identification by a witness. The Louisiana court, relying on *Schmerber, supra,* and *Wade, supra,* held that the words were not of a testimonial nature and the trial court committed no error in requiring the defendant to speak the words.

Appellant concludes by arguing that the order of the court deprived him of his Fourteenth Amendment right to due process under the United States Constitution. He claims that the manner and circumstances of the attempted voice identification were overly suggestive and conducive to an irreparable mistake in identification. Appellant's authority for this argument is *Palmer. v. Peyton,* 359 F.2d 199 (4th Cir. 1966). We do not believe that case is on point. It involved a pretrial identification procedure wherein the only voice submitted for identification was the voice of the defendant. The policy considerations governing pretrial identifications do not apply to an in-court identification such as was attempted here. In pretrial identifications there is no opportunity to confront the witness and cross-examine, whereas when an in-court identification is made, the defendant has the opportunity to fully test the ability of the witness to make an identification.

Affirmed.

KRUCKER and HATHAWAY, JJ., concur.