**STATE of Missouri, Respondent,**

v.

**Audrey MORTON, Appellant.**

Nos. 13620, 13622.

Missouri Court of Appeals,
Southern District.

Jan. 9, 1985.

Donald Rhodes, Bloomfield, Thomas L. Arnold, Benton, for appellant.

John Ashcroft, Atty. Gen., Mark S. Siedlik, Asst. Atty. Gen., Jefferson City, for respondent.

FLANIGAN, Judge.

A jury found defendant Audrey Morton guilty of two offenses of selling marijuana (§ 195.020).[1] The first sale took place on July 28, 1983, and the second sale took place the following day. Both sales were made to Richard Rodgers, a police informant, and took place at defendant's house in Cape Girardeau. By agreement the two offenses were tried together. Defendant was sentenced to ten years' imprisonment for each offense, the sentences to run concurrently. Defendant appeals.

Defendant's first point is that the evidence is insufficient to support the verdict. In ruling this point this court must view the evidence in the light most favorable to the state and accept all substantial evidence and all legitimate inferences fairly deducible therefrom which support the verdict. All evidence unfavorable to the state must be disregarded and the submissibility of the case will be determined upon the basis of all the evidence, including those portions of defendant's evidence which fa-

vor the state. *State v. Stith*, 660 S.W.2d 419, 420[1] (Mo.App.1983).

The state's evidence showed that Rodgers, working undercover with Cape Girardeau police officers, was outfitted with a recording device which was concealed on his person. On the late afternoon of July 28, police officers "strip searched" Rodgers, gave him some cash and dropped him near the home of defendant. Rodgers testified that he entered the home and purchased marijuana from the defendant for $20. The conversation between Rodgers, defendant, and defendant's son Bruce Morton, who was also present at the sale, was recorded. A transmitter permitted the officers to hear the conversation while it was being recorded.

Essentially the same transaction took place on July 29 but this time the third person present was one Caldwell rather than defendant's son. The state's evidence showed that the substance purchased was marijuana. Although police officers had driven Rodgers to the vicinity of defendant's house before the sales and picked him up thereafter, they were not present when the sales took place.

In attacking the sufficiency of the state's case defendant argues that "the only evidence to connect defendant with the crimes was that of Rodgers." The defendant then argues that Rodgers' testimony was unworthy of belief because his reputation for honesty was bad, his descriptions of defendant and her son "were grossly inaccurate," his identification of Caldwell "was entirely inaccurate," Rodgers had been previously convicted "of criminal activity" and "was guilty of further criminal activity within two months after the sales," no one actually saw Rodgers enter defendant's home, and the quality of the tapes "of the conversations" was so poor as to be unintelligible.

■■ As pointed out in *State v. Williams*, 652 S.W.2d 102, 111[16–19] (Mo. banc 1983), the determination of the credi-

**1.** All references to statutes are to RSMo 1978, V.A.M.S., and all references to rules are to Missouri Rules of Court, V.A.M.R.

bility of a witness is within the peculiar province of the jury. Furthermore, testimony of a single witness may be sufficient to make a submissible case. Rodgers' criminal record may have affected his credibility but it was for the jury to decide how much weight to give his testimony.

■ The recordings of the two conversations were introduced into evidence. Also introduced was the recording of a telephone conversation between Rodgers and a woman whom Rodgers telephoned on the evening of the first sale. That telephone call, made from the police station, was to the telephone number listed in the directory for Audrey Morton at her residence. In that conversation arrangements were made for the second sale. Although the recordings may be inaudible in places, other portions are audible. Those recordings merely supplemented the testimony of Rodgers as to the sale transactions. Defendant's first point has no merit.

Defendant's second point is that the trial court erred in receiving into evidence state's Exhibit 2 (recording of the July 28 sale), state's Exhibit 3 (recording of the July 28 telephone conversation), and state's Exhibit 4 (recording of the July 29 sale), and permitting the jury to hear them, because (a) the recordings were of such poor quality that it is impossible to understand what was said or to identify the voices; (b) the recordings were never identified by Richard Rodgers, the person who purported to make them; (c) there was no proper foundation for the admission of the recordings; (d) the recordings show that they had been interrupted twice, and (e) no one identified any voice to be that of defendant.

At the time the three exhibits were respectively offered into evidence defendant objected to Exhibit 2 on the ground "there is no foundation that this is the voice of defendant"; she objected to Exhibit 3 on the ground the exhibit was "not properly identified"; the objection to Exhibit 4 was "no proper foundation." Defendant also made some objections on constitutional grounds to Exhibit 3 and Exhibit 4 but they are not presented here and are thus abandoned.

■ A ground for objection which is not stated at the time the evidence is offered is not timely presented to the trial court and is not preserved for appellate review. *State v. Franco*, 544 S.W.2d 533, 537[7] (Mo. banc 1976); *State v. Martin*, 651 S.W.2d 645, 652[8] (Mo.App.1983). A comparison of the objections made at trial with those set forth in defendant's second point shows that many of them were not preserved.

This court has listened to the recordings. Richard Rodgers, who was a participant in all three conversations, testified that all portions of the conversations were recorded, that he had listened to the recordings, and that there had been no changes in them. Detective Casteel, who placed the portable transmitter and recording device on Rodgers, explained their respective functions to the jury. He, too, testified that the entire conversations were taped and there had been no changes or deletions.

■ Of course Rodgers testified that defendant was the woman whose voice was being recorded at the time of the two sales. Casteel testified that it was defendant's telephone number which was dialed when the telephone conversation took place. The mere fact that portions of a recording are inaudible does not necessarily render the entire recording inadmissible. *State v. Miller*, 588 S.W.2d 237, 241[8] (Mo.App. 1979). See, generally, 57 A.L.R.3d 746. The trial court did not abuse its discretion in receiving the three exhibits. Defendant's second point has no merit.

Defendant's third point is that the trial court erred in granting, over defendant's objection, the prosecutor's request that the defendant read to the jury, at the close of the presentation of the state's case, an excerpt from Mark Twain's Life on the Mississippi.

On the morning of the trial, and before it began, the prosecutor informed the court in chambers that as his last piece of evidence he was going to ask the court to order the

defendant to read "the first few pages" of Life on the Mississippi "so the jury will have a sample of what the defendant's voice sounds like." Defense counsel objected on the ground that "this has not been disclosed to me of any documents that they would have her read—this violates her constitutional right not to take the witness stand." Defense counsel also requested a continuance. The court overruled the objections, denied the request, and stated he was going to require the defendant to read the material.

After the state had presented the testimony of four witnesses, covering over 100 pages of the transcript, the court, at the prosecutor's request and over defendant's renewed objection, asked the defendant to read page 1 from that book. The record shows that the defendant "read briefly" from it. The purpose of the reading was to enable the jury to compare the voice of the defendant with a woman's voice contained on the three recordings which the jury had previously heard.

Defendant asserts that the prosecutor's request was improperly granted because: (a) the request was not made until the morning of the trial; (b) the state had not previously disclosed its intention to make the request although defendant had previously sought discovery; (c) defendant should have been granted a continuance; (d) the comparison was improperly conducted in that the only right way to have done it was to require defendant to speak into a recording device and compare that recording with the others; and (e) the procedure was improperly suggestive in that only defendant's voice was tested.

■ At the time the prosecutor's request was granted, defendant objected on the grounds set forth in (a), (b), and (c), but failed to do so with respect to (d) and (e). The latter two have not been preserved for appellate review and this court finds no plain error with respect to those two grounds.

■ A criminal defendant's Fifth Amendment privilege against self-incrimi-nation is not violated by an order of the trial court requiring him to speak, for voice identification purposes, in the presence of the jury. *United States v. Williams,* 704 F.2d 315 (6th Cir.1983); *State v. Spain,* 27 Ariz.App. 752, 558 P.2d 947 (1976). See, generally, 3 A.L.R.4th 374 (propriety of requiring criminal defendant to participate in demonstration in presence of jury—voice demonstration cases are collected at p. 421).

In *United States v. Williams,* supra, a criminal defendant was required, during his trial, to read a "neutral passage" from Time magazine to the jury for purpose of voice identification. Rejecting defendant's claim that his Fifth Amendment privilege had been violated, the court pointed out that the United States Supreme Court had ruled that an individual's distinctive resonance, speech and voice idiosyncrasies are identifiable physical characteristics and that compelling a demonstration of them does not violate the privilege against compulsory self-incrimination. *United States v. Wade,* 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), and *United States v. Dionisio,* 410 U.S. 1, 93 S.Ct. 764, 35 L.Ed.2d 67 (1973).

Missouri cases have upheld the trial court in granting a prosecutor's request, over defense objection, that the defendant participate in a demonstration of a physical characteristic to the jury. In *State v. Walls,* 637 S.W.2d 812 (Mo.App.1982), the trial court did not err in granting the prosecutor's request that defendant be ordered to wear certain clothing in the presence of the jury. The court said that the trial court, in balancing the probative value of demonstrative evidence with its prejudicial effect, is vested with broad discretion in admitting or rejecting such evidence. In *State v. Owens,* 620 S.W.2d 448 (Mo.App. 1981), the trial court did not err in granting the prosecutor's request that the court order the defendant to stand for the purpose of allowing a witness to inspect a tattoo on defendant's face. In *State v. Proctor,* 535 S.W.2d 141 (Mo.App.1976), the trial court did not err in compelling defendant to walk, in the presence of the jury, for the purpose

of displaying a limp. Other examples of demonstrative evidence which may properly be obtained from a defendant without violation of his Fifth Amendment rights are set forth in *State v. Norris,* 577 S.W.2d 941 (Mo.App.1979), both in pretrial and in-trial settings.

In support of ground (a) defendant argues that the reading of the book should not have been permitted because the prosecution had not pursued the pretrial procedure set forth in Rule 25.06(B). That rule provides, in pertinent part:

"(B) Upon motion by the state, and subject to constitutional limitations and any other safeguards deemed appropriate by the court, and upon a showing of good cause, the court may order the defendant to: ... (2) Speak for identification."

Rule 25.02 provides, in pertinent part:

"Requests or motions for discovery shall be made not later than twenty days after arraignment in the court having jurisdiction to try the offense.... The court may enlarge or shorten the times herein specified."

In support of ground (b) defendant cites Rule 25.03(A) which provides that the state shall, upon written request of defendant's counsel, disclose "such part or all of the following material and information within its possession or control designated in said request: (1) the names and last known addresses of persons whom the state intends to call as witnesses ... at the trial...." Defendant had requested the foregoing information and the state, in listing its witnesses, did not list defendant.

█ Of course the state could not call the defendant as a witness if the defendant saw fit to invoke her privilege against self-incrimination. The foregoing authorities hold, however, that requiring the defendant to participate in a courtroom demonstration of a physical characteristic does not constitute the giving of testimony so far as the protection of the Fifth Amendment is concerned. It follows that the prosecutor's request that the defendant give a voice demonstration in the presence of the jury did not make the defendant "a witness" of the type required to be listed in response to a Rule 25.03(A)(1) request.

█ It is true, as defendant points out, that Rule 25.16 provides, in effect, that where a party has failed to comply with a discovery rule, the court may impose certain sanctions including granting a continuance, excluding evidence, or entering any order which it deems just under the circumstances. That rule does not come into play here because there was no discovery violation by the state.

Defendant relies primarily on *People v. Giglio,* 428 N.Y.S.2d 27, 74 A.D.2d 348 (1980), where it was held that a defendant could not be convicted of contempt of court by disobeying a court order which was itself unlawful. The disobeyed order was that the defendant demonstrate his voice to the jury during the course of his criminal trial. The order was held to be illegal and thus not a proper predicate for the crime of contempt. The court said, at 428 N.Y.S.2d p. 31:

"The defendant was denied due process when he was compelled to submit to the taking of a voice exemplar during his trial for bribery. No prior notice of the prosecution's intention to apply for that relief was given to the defendant; the necessity for the relief was not established in any papers served on the defendant; and he was not afforded the opportunity to controvert the grounds for the application."

In a later New York case, *People v. Smith,* 450 N.Y.S.2d 57, 86 A.D.2d 251 (1982), the court, expressly declining to follow *Giglio,* held that a defendant is not constitutionally entitled to prior notice, formal application, and a hearing, before he may be compelled to exhibit his voice to a criminal trial jury.

The facts in *People v. Smith,* supra, are remarkably similar to the instant case. Smith was on trial for selling a controlled substance to a police informant who was "wired for sound" by the police. Tape recordings were made of the transaction. At the request of the prosecutor the court

ordered the defendant to exhibit his voice to the jury for comparison with the voice on the tapes.

The court held that the voice demonstration did not violate the privilege against self-incrimination nor did it violate the Fourth Amendment's prohibition against unreasonable searches and seizures. The court rejected defendant's argument that the voice demonstration denied him procedural due process. The court said, at 450 N.Y.S.2d p. 60: "This case thus involves nothing more than the kind of nonintrusive order to engage in various acts in the courtroom for identification purposes which have long been upheld in this State and other jurisdictions...."

The court said that defendant was not denied a fair trial by the procedures used. The content of what defendant was required to say was "totally innocuous and unrelated to any factual issues in the case." Significantly, the court said: "[T]he District Attorney was not compelled to avail himself of pretrial discovery procedures for obtaining a sample of defendant's voice."

In *State v. Spain,* supra, the defendant was required to read some words in the presence of a witness as well as the jury so that the witness could attempt to identify defendant's voice as that of his assailant. The court rejected defendant's contention that he should not have been required to make a voice demonstration before the jury because there had been no pretrial request. The court said, at 558 P.2d p. 951:

"The policy considerations governing pretrial identifications do not apply to an in-court identification such as was attempted here. In pretrial identifications there is no opportunity to confront the witness and cross-examine, whereas when an in-court identification is made, the defendant has the opportunity to fully test the ability of the witness to make an identification."

■ This court agrees with the rationale of *People v. Smith,* supra, and *State v. Spain,* supra. In advance of the trial defendant and his counsel knew of the existence and content of the three recordings. The quality of defendant's own voice could hardly have been a matter of surprise to defendant or her counsel. Short of changing that voice, it is difficult to see what purpose a continuance would have served. The fact is that the prosecutor disclosed his intention to request a voice demonstration several hours before the demonstration was conducted. The reading was brief and the text was innocuous. This court holds that procedures utilized here did not deprive defendant of a fair trial. Defendant's third point has no merit.

Defendant's fourth point is that the trial court committed plain error in not requiring the court reporter to record the words from the book by Mark Twain which defendant read to the jury. The record discloses that the trial court asked the defendant to read page 1 from that book. The transcript then states: "At this time the defendant read briefly from the book."

■ Although the record does not disclose the words read by the defendant, the state's brief sets forth the language contained on page 1 of a 1927 edition of Life on the Mississippi. There the inimitable author describes the river itself. Neither in the trial court nor in this court does defendant claim that the language was offensive or obnoxious, nor does defendant deny the accuracy of the state's brief's account of what was read. The object of the demonstration was not the language used but a voice, a physical characteristic which, like a limp or gesture, defies accurate verbal description. Defendant's fourth point has no merit.

Defendant's fifth point is that the trial court erred in receiving into evidence, over defendant's objection, testimony that defendant's house was searched on August 2, 1983, pursuant to a search warrant, and that during the course of that search marijuana was found in defendant's bedroom.

The trial incident underlying defendant's fifth point took place during the direct examination of a state's witness John Casteel, a detective with the Cape Girardeau Police Department. Before Casteel testified,

however, the August 2 search had been mentioned in the presence of the jury.

During his opening statement the prosecutor said, "A few days later, on the 2nd of August, Curt Casteel and other police officers participated in a search. They obtained a search warrant of Audrey Morton's house, and in her house, under the bed in the room in which she had been sleeping, they found a quantity of money under the bed and more marijuana under the bed." The first witness for the state was Richard Rodgers, who testified concerning the sale on July 28. He then testified that on July 29, before the second sale took place, "We went down to [Judge] Mueller's office and got an affidavit signed.... That was a search warrant." There was no defense objection to either of the foregoing references to the August 2 search.

Later in the trial, during the direct examination of detective Casteel, the witness testified that he had gone to the defendant's home after July 29. Thereupon a conference took place at the bench in which the defense counsel informed the court that the witness "is going into the search warrant and the search of the house. I object to any testimony concerning that. [Defendant] is not charged with possession. She is charged with these two sales. I see no need to present any evidence of any additional alleged violations."

The prosecutor said to the court, "Our position is that it goes toward the knowledge of this defendant, the fact that it is only two or three days later she had in her house, under her bed, a sum of money and marijuana." The court overruled the objection.

Casteel then testified that on August 2 at 10:30 a.m. he went to defendant's house to execute a search warrant which had been issued for that residence. Defendant was in the front room. The witness searched the house and found, underneath the bed in the south bedroom, a roll of money totaling $410 and some marijuana seeds. Defense counsel then said, "Objection, Your Honor, unless there is some evidence it was mari-

juana seeds." The court said, "The objection will be sustained as to the latter comments." A defense request for mistrial was denied. Casteel then testified, without further objection, that he had found "some greenish-brown hard seeds."

■ A criminal defendant has the right to be tried only for the crime or crimes with which he is charged. *State v. Wright*, 582 S.W.2d 275, 277 (Mo. banc 1979). The general rule is that proof of the commission of separate and distinct crimes is inadmissible unless it has some legitimate tendency to establish that the defendant is guilty of the crime with which he is charged. *State v. Shaw*, 636 S.W.2d 667, 671–672 (Mo. banc 1982). "Specifically such evidence is admissible to prove the crime charged when it tends to establish motive, intent, the absence of mistake or accident, a common scheme or plan embracing the commission of two or more crimes so related that proof of one tends to establish the other, or the identity of the person charged with the commission of the crime on trial." *State v. Shaw*, supra, at 672.

When the evidence of the fruits of the August 2 search was offered the prosecutor stated, "It goes toward the knowledge of this defendant." On this appeal, however, the state argues that "the evidence is relevant to show the common scheme or plan of drug sales carried out by the defendant."

The defense, with respect to both charges, was alibi. Defendant and other defense witnesses testified that at the time of the two sales she was not at home. The state's evidence, primarily through Rodgers, identified the defendant as the person involved in the sales. There was no issue concerning the fact that the substance which was sold, in each instance, was marijuana, or that Rodgers paid money for it, or that the sales took place in defendant's house.

In prosecutions for the sale of a controlled substance several Missouri cases have held that the trial court committed reversible error in receiving evidence that

the defendant sold the same substance on other dates. In *State v. Reed,* 447 S.W.2d 533 (Mo.1969), where defendant was charged with selling marijuana on July 12, 1967, it was error to show that on June 14, 1967, defendant sold marijuana to the same purchaser. The court rejected the state's argument that evidence of the June 14 sale was admissible to show knowledge, intent, motive, or to establish identification. In *State v. Carter,* 475 S.W.2d 85 (Mo.1972), defendant was charged with selling amphetamine on April 28, 1967. It was error to introduce evidence that on March 16, 1967, defendant had stated that he had previously sold substantial amounts of amphetamine "per week" and had quit doing so three weeks prior to March 16. The court said that the issue with respect to whether the defendant was the person who committed the act charged was, except where admitted, an issue in every case and that issue alone does not authorize evidence of other crimes. In *State v. Jackson,* 495 S.W.2d 80 (Mo.App.1973), where defendant was charged with selling drugs on December 19, 1971, it was reversible error to show that he had sold such drugs before and after that date. See, generally, 93 A.L.R.2d 1097 (admissibility, in prosecution for illegal sale of narcotics, of evidence of other sales).

■ The fact, standing alone, that the challenged evidence was of a crime committed after, rather than before, the crime on trial, does not necessarily make that evidence incompetent. *State v. Shaw,* 636 S.W.2d 667, 672[7] (Mo. banc 1982).

In *State v. Cheesebrew,* 575 S.W.2d 218 (Mo.App.1978), defendant was charged with possessing marijuana in his trailer on March 5. The defendant denied any knowledge that the marijuana was concealed in his trailer. On rebuttal the state introduced evidence that defendant had sold marijuana on February 25 at his trailer. The eastern district of this court held that the rebuttal evidence was properly received and, in dictum, said it would have been admissible in the state's case-in-chief as tending to show defendant knew of the character of the substance found in the trailer on March 5 and that he intentionally possessed it.

■ In the case at bar there was evidence strongly tending to prove defendant's guilt. The dispute primarily focused on the identity of the seller, not on the seller's knowledge of the presence of marijuana. Earlier in the trial references to the fruits of the August 2 search had been made in the presence of the jury and without objection. This court holds that under the circumstances here the testimony of detective Casteel concerning the August 2 search should not have been received but that its reception did not prejudice the defendant.

■ Defendant's sixth point is that the trial court erred in sustaining the prosecutor's hearsay objection to defense counsel's question to witness Doris Seabaugh. By the question, and the offer of proof in support of it, counsel sought to elicit from the witness that on July 29, at about the hour of the second drug sale, Bruce Morton told the witness that defendant had gone to Advance, Missouri. The offered evidence was hearsay and the trial court's ruling was correct.

Defendant's seventh point is that the trial court erred in allowing the jury, at its request, to take the three recordings and the recorder to the jury room because "only a portion of the tapes were played during the trial and no one had ever listened to the remainder of the tapes."

After the jury had retired to deliberate, they sent a note to the trial court stating that they wanted the three recordings and some checks, all of which had been received in evidence. Defense counsel stated that he had no objection to sending in the checks but that he objected to sending in the recordings "because the entire tape has not been played for the court nor to me and there is no way of knowing if there is any other matter on this tape, anything which might be prejudicial."

The court then asked the prosecutor whether or not the prosecutor was repre-

senting to the court that "the only thing that is on these tapes are the tape recordings that were here with us today." The prosecutor answered in the affirmative. Defense counsel then asked the prosecutor if he had heard all of one tape. The prosecutor replied that he had heard all of one side and nothing was on it except what the jury had previously heard. The prosecutor then said, "If there is something on the other side we could turn it over." Defense counsel made no request that the latter be done. With regard to the other two tapes, the prosecutor also told the court, "that is all that is on that tape." Although defendant preserved this point in his motion for new trial, no evidence was offered at the hearing on the motion to show that the recordings contained anything other than what the jury had heard during the trial.

In *State v. Evans,* 639 S.W.2d 792 (Mo. banc 1982), the supreme court held that the trial court did not err in permitting the jury to hear, during its deliberation, a tape recording of the defendant's confession. Although the recording had been introduced into evidence, and a witness had testified as to its contents, the recording itself had not been played before the jury during the presentation of evidence. The latter feature, not present here, prompted a dissent.

In *United States v. Humphrey,* 696 F.2d 72 (8th Cir.1982), it was held that the trial court did not abuse its discretion in sending to the jury room a tape of defendant's pretrial conversation with a witness. To similar effect see *State v. Williams,* 643 S.W.2d 3 (Mo.App.1982); 37 A.L.R.3d 238 (permitting documents or tape recordings containing confessions or admissions to be taken into jury room in criminal case).

■■■ This court, as did the supreme court in *State v. Evans,* supra, listened to the tapes and they contain no extraneous material. Defendant's seventh point has no merit.

Defendant's eighth point is that the trial court erred in failing to instruct the jury "on the lesser included offenses of possession of marijuana and nonremunerative transfer of marijuana" because the state's evidence with regard to the two sales showed that the defendant possessed marijuana and because, with respect to the sale of July 29, the state's evidence showed that defendant handed the marijuana to Lee Caldwell who in turn sold it to Rodgers and that it was Caldwell, and not defendant, who was paid.

■■■ This point lacks merit for two independent reasons. First, in non-homicide cases, "a defendant may not complain about a court's failure to give a lesser-offense instruction unless the defendant requests it specifically," *State v. Olson,* 636 S.W.2d 318, 322–323[9] (Mo. banc 1982), and defendant made no such request. Second, "The court shall not be obligated to charge the jury with respect to an included offense unless there is a basis for a verdict acquitting the defendant of the offense charged and convicting him of the included offense." § 556.046.2. Where, as here, the state's evidence showed the sale of marijuana and defendant's participation in that sale, and the defense was alibi, there was no factual basis for submitting an instruction on a lesser included offense. *State v. Story,* 646 S.W.2d 68 (Mo. banc 1983); *State v. Corley,* 639 S.W.2d 94 (Mo. App.1982); *State v. Ashley,* 616 S.W.2d 556 (Mo.App.1981); *State v. Ingram,* 610 S.W.2d 395 (Mo.App.1980); *State v. Arnall,* 603 S.W.2d 111 (Mo.App.1980). Defendant's eighth point has no merit.

Defendant's ninth point, based on an alleged error of the trial court in failing to give another instruction, need not be considered because it was presented on the erroneous assumption that defendant's eighth point had merit.

The judgment is affirmed.

CROW, P.J., and HOGAN, TITUS and MAUS, JJ., concur.