Kaye, J.
(dissenting). Petitioner, an attorney in the Monroe County Public Defender’s office, represented Raymond Lennon, an indigent charged with several misdemeanors. When petitioner discovered, just after jury selection, that the chief prosecution witness against Lennon would be Christopher Pellitera, he informed the court that his office represented Pellitera in. a pending unrelated criminal action and, noting the possible impropriety and inherent unfairness of joint representation, asked the court *632 to appoint independent counsel for the witness. Instead, the court directed petitioner to proceed with the Lennon trial and prohibited him from questioning Pellitera about the pending criminal charges against him, limiting cross-examination to other prior bad acts, arrests or convictions. This ruling violated Lennon’s right to confront witnesses against him (see Davis v Alaska, 415 US 308), and denied both Lennon and Pellitera the right to the effective assistance of counsel (see Holloway v Arkansas, 435 US 475; People v Gomberg, 38 NY2d 307; People v Frisbie, 70 AD2d 1053). The ruling also forced petitioner to breach his ethical responsibility by presenting him with a choice of either declining to cross-examine Pellitera, thereby violating his duty to Lennon, or seeking to impeach Pellitera as directed, a violation of his duty both to Lennon and to Pellitera, which could in addition have led to the disclosure of confidential information about Pellitera, a breach irreparable on appeal.
The importance of obedience to orders of a trial court cannot be overstated. But this concern, however vital, should not cause this court to overlook a rare instance when, as here, a trial court has so clearly abused its considerable power as to leave counsel with no reasonable alternative (see, e.g., People v Giglio, 74 AD2d 348 [Hopkins, J.]; De Salvo v Kaplan, 52 AD2d 570; United States v Wendy, 575 F2d 1025; State v Gasen, 48 Ohio App 2d 191). Petitioner pleaded with the court in good faith to adjourn the Lennon trial so that independent counsel could be assigned for Pellitera. Faced with the court’s directive to proceed, he chose, in a most respectful manner and without regard to his personal interests, not to betray the interests of his clients. He should not be punished for that.*
Judges Jasen, Jones, Wachtler, Meyer and Simons concur; Judge Kaye dissents and votes to reverse in an opinion in which Chief Judge Cooke concurs.
*633 Judgment affirmed, with costs, in a memorandum.

 As noted in United States v Wendy (575 F2d 1025, 1030) “[c]ontempt by an attorney is always a serious matter. While a simple rebuke or more serious censure by the court might not have the same effect as in the more tightly-knit Bar of England [n omitted], the more serious exercise of the contempt power is awesome in its implications. A citation is likely to afflict the contemnor with a ‘stigma of antisocial conduct.’ Note, Procedures for Trying Contempts in the Federal Courts, 73 Harv.L.Rev. 353, 355 (1959). For a lawyer seeking admission to other bars or to practice before federal agencies, a citation might have considerable economic consequences.”