OPINION OF THE COURT
Cornelius J. O’Brien, J.
The defendant was found guilty after a jury trial of the crime of robbery in the first degree. During the trial the prosecutor made an application in the jury’s presence asking that the defendant be compelled to exhibit his knee in order for the jury to observe alleged marks and discolorations as testified to by the People’s chief witness, the victim of the crime. The witness, a paramedic who had examined the perpetrator of the crime immediately before the robbery, was on the stand at the time. Defendant’s attorney immediately objected and moved for a mistrial, claiming a violation of the defendant’s rights under the 5th Amendment.
The court sustained defense counsel’s objection and declined to permit the showing of the knee, but denied the application for a mistrial. The case was submitted to the jury with no comment from the court on the defendant’s refusal to exhibit his knee. The prosecutor was instructed not to make any reference to it in *439 summation and did not do so. The jury came back with a guilty verdict after approximately an hour and a half’s deliberation. Obviously the jury inferred that the defendant’s refusal to show his knee indicated that it was in fact marked and discolored and that the defendant had been correctly identified as the robber.
Raised in this trial were two issues which would appear to be of first impression in New York:
(1) Absent a pretrial order for discovery, may a court grant a prosecutor’s application during trial that a defendant exhibit to the jury a portion of his body normally hidden from view?
(2) May the defendant’s refusal to exhibit such a portion of his body be brought to the attention of the jury, thereby allowing an unfavorable inference to be drawn against him?
THE FACTS
The defendant was arrested on December 2, 1983, as he was exiting the office of a Brooklyn physician, by police officers on a stakeout who were part of a team investigating a series of knife-point robberies of physicians and dentists in Kings and New York Counties. After being viewed in a lineup by the victims of 7 or 8 robberies that occurred in the 75th Precinct in Brooklyn, he was identified by three of those victims. He was indicted for these three robberies. After a motion for a severance was granted he was tried here for one of the robberies which occurred on October 31, 1983.[1]
The complaining witness, George Spohr, a physician’s assistant, testified that at approximately 6:00 p.m. on October 31, 1983, he was working in the office of Dr. Alan Cohen at 1052 Liberty Avenue in Kings County. The defendant, who claimed he had injured one of his knees on his job that day, came in to be examined for treatment and X rays.
After Mr. Spohr interviewed the defendant and examined his knee and as he was leading him to the X-ray room, the defendant suddenly grabbed Mr. Spohr by the back of his hair, made him turn around slowly and proceeded to rob him at knife point. He then fled the premises.
The witness described the left knee of the person who had robbed him as having a discolored area of “about two or three inches square” that appeared to be the result of an old injury.
*440 The defendant did not testify. The only witness he called was a police officer who testified that when he arrived at the scene shortly after the incident, Mr. Spohr was able to give only a sketchy description of the perpetrator because everything happened so quickly. A police report containing the description was introduced as a defense exhibit.
ISSUE ONE
ABSENT A PRETRIAL ORDER FOR DISCOVERY, MAY A COURT GRANT A PROSECUTOR’S APPLICATION DURING TRIAL THAT A DEFENDANT EXHIBIT TO THE JURY A PORTION OF HIS BODY NORMALLY HIDDEN FROM VIEW?
The law in other jurisdictions may be otherwise (see, e.g., Ann., 3 ALR4th 374-449; 8 Wigmore, Evidence § 2265 [3d ed]), and there is dicta in a lower court case that supports the prosecutor’s application (People v Strauss, 174 Misc 881). However, even as far back as 1894 in People v Gardner (144 NY 119), the New York Court of Appeals suggested that this type of evidence should be obtained from a defendant before trial. “A prisoner’s person may be examined for marks and bruises, and then they may be proved on his trial to establish his guilt” (supra, at p 128; emphasis added).
In Gardner (144 NY 119, supra) the defendant, over objection by counsel, was compelled to stand up in the courtroom to be identified as a witness. Pointing out that the history of the 5th Amendment was to prohibit the compulsory oral examination of witnesses either before or upon trial, the Court of Appeals, after stating that it was necessary that the defendant be identified as the person named in the indictment and charged with the crime, said: “His mere standing up did not identify him with the alleged crime, and did not disclose any act connected with the crime. There was nothing on his person or in his appearance that in any way connected him with the crime, or furnished any evidence of his guilt.” (People v Gardner, supra, at p 127.)
As justification for his request that the defendant be compelled to exhibit his knee to the jury, the prosecutor cited People v Smith (86 AD2d 251 [3d Dept 1982]). In Smith, at the prosecutor’s request, the court directed the defendant to exhibit his voice to the jury for comparison with a voice on a tape recording made at the time of a drug sale. The Third Department held that a person’s voice is merely an identifying physical characteristic and compelling him to speak for the purpose of physical identification was not violative of the 5th Amendment privilege against *441 self-incrimination. There was also no violation of the defendant’s 4th Amendment rights according to Smith because his person was lawfully seized, and under the holding of United States v Dionisio (410 US 1) “seizure of a voice exemplar ‘[did] not involve the “severe, though brief, intrusion upon cherished personal security” ’ or any ‘intrusion into the body’ ” (People v Smith, supra, at p 253).
The Third Department held further that there was no denial of procedural due process because the defendant failed to identify any valid liberty or property interest that was endangered because he was forced to exhibit his voice to the jury. This being so, he was not entitled to notice and a hearing (People v Smith, 86 AD2d 251, 253, supra). “[I]f the right to ‘seize’ defendant’s person had not already been established, or if the ‘seizure’ of the evidence sought involved an invasion of defendant’s personal dignity or intrusion into his body, procedural due process would have required notice and a hearing” (People v Smith, supra, p 254, n).
The Third Department in Smith (supra) declined to follow People v Giglio (74 AD2d 348 [2d Dept 1980]) “to the extent that Giglio stands for the proposition that a defendant is constitutionally entitled to prior notice, formal application, and a hearing before he may be compelled to exhibit his voice to a criminal trial jury” (People v Smith, 86 AD2d 251, 252, supra).
People v Giglio (supra) was an appeal from a contempt conviction resulting from the defendant’s refusal to obey the lower court’s order directing him to provide voice exemplars during a prior bribery trial. In reversing, Justice Hopkins, writing for the Second Department, held that the defendant was denied due process when he was compelled to submit to the taking of the voice exemplar during the trial. “No prior notice of the prosecution’s intention to apply for that relief was given to the defendant; the necessity for the relief was not established on any papers served on the defendant; and he was not afforded the opportunity to controvert the grounds for the application” (People v Giglio, 74 AD2d, at p 355). Justice Hopkins also pointed out that although the provisions of CPL article 240 did not go into effect until after the trial in Giglio, those provisions “reflect the policy of our system of criminal administration that the application by the prosecution for voice exemplars must be made prior to trial on papers served on the defendant subject to constitutional limitations” (People v Giglio, 74 AD2d 348, 356, supra).
The Third Department decided People v Smith (supra) on April 22,1982. On July 1,1982 the Court of Appeals came down *442 with People v Moselle (57 NY2d 97). In Moselle, the court held that in the absence of a defendant’s consent thereto, blood samples taken without a court order are inadmissible in prosecutions under the Vehicle and Traffic Law and the Penal Law. After carefully pointing out that the decision was premised on statutory and nonconstitutional legal principles (supra, at p 104), the Court of Appeals stated that by enacting CPL 240.40 the Legislature has “pre-empted authorization for the administration of blood tests for use in * * * criminal prosecutions” (supra, at p 109). Since the authorization providing for a defendant’s submission to a physical or medical inspection of his body also comes under CPL 240.40 (2), it would seem to be clear that unless the prosecution moves pretrial (CPL 240.90 [1]), there may not be such an inspection in the course of the trial and certainly not in the presence of the jury.
Based on procedural due process (People v Giglio, 74 AD2d 348, supra) and statutory (People v Moselle, 57 NY2d 97, supra) grounds, therefore, the People were not entitled to a directive from the court compelling the defendant to exhibit his knee to the jury.
ISSUE TWO
MAY THE DEFENDANT’S REFUSAL TO EXHIBIT A PART OF HIS BODY NORMALLY HIDDEN FROM VIEW BE BROUGHT TO THE ATTENTION OF THE JURY, THEREBY ALLOWING AN INFERENCE TO BE DRAWN AGAINST HIM?
The defendant’s refusal to bare his knee was accentuated by the prosecutor’s request made in open court. The defendant was immediately informed through his attorney that the jury would undoubtedly, even without further remarks or instruction, draw an unfavorable inference against him unless he exhibited the knee. Later the court again, out of the presence of the jury, asked defense counsel if the defendant, as an alternative, would permit color photographs of the knee to be taken and shown to the jury. Again the defendant refused. Thus, under the circumstances here, there was no compulsion or impermissible coercion involved in the defendant’s refusal to exhibit his knee. He had absolute freedom to either show the knee or not and he was informed clearly through his attorney of the consequences which would result from the refusal (People v Thomas, 46 NY2d 100, 108; see also, South Dakota v Neville, 459 US 553).
People v Thomas (supra) and South Dakota v Neville (supra) are not directly on point here. Neither are People v Paddock (29 NY2d 504) and People v Stratton (1 NY2d 664). Thomas and *443 Neville involved statutory provisions allowing evidence of a refusal of a defendant charged with drunken driving to submit to a blood alcohol test to be introduced against him at trial; and at the time People v Paddock (supra) and People v Stratton (supra) were decided, the opposite situation pertained. The Vehicle and Traffic Law “conferred an absolute right to refuse to submit to such a test, unqualified by any provision that evidence of such refusal might be received on trial” (People v Thomas, 46 NY2d 100, 109, supra).
It has long been the law that the jury may draw an inference against a defendant in a criminal case who fails to “produce evidence which, if favorable would naturally have been produced.” (8 Wigmore, Evidence § 2273, at 426 [3d ed].) “The failure to produce evidence, in general * * * is open to inference against a party accused, with the same limitations * * * applicable to civil parties” (8 Wigmore, Evidence § 2273, at 427 [3d ed]).
A defendant’s refusal to submit to a physical examination allows the jury to draw an unfavorable inference against him, unless there is a statutory prohibition against the drawing of such an inference (People v Stratton, 1 NY2d 664, supra; see also, McCormick, Evidence § 272, at 656 [2d ed]). There is no such statutory prohibition in New York for failure to move for discovery pretrial (see, CPL 240.70).
The difficulty here is: how does the prosecutor get the fact of a defendant’s refusal to disclose relevant nontestimonial evidence before the jury? In People v Stratton (1 NY2d 664, supra) the defendant did not take the stand. A police doctor testified, over objection, that the defendant who had been arrested for driving while intoxicated had refused to submit to a test for blood alcohol. The Court of Appeals affirmed the Appellate Division’s reversal of the trial court. The Third Department had held that under Vehicle and Traffic Law § 71-a the defendant had an absolute right to refuse to submit to the blood test and stated that: “The courts of this State have long and consistently held that under our self incrimination laws the receipt of evidence in a criminal trial of a defendant’s complete silence or refusal to answer is reversible error * * * This has been on the theory that the fact that a defendant did what he had an absolute right to do cannot be used to create any unfavorable inference against him” (People v Stratton, 286 App Div 323, 326).
In People v Paddock (29 NY2d 504, supra) the defendant testified. During cross-examination the prosecutor elicited testimony that he had refused to take a blood alcohol test. Judge Jasen concurring on constraint of Stratton (supra) said that *444 Stratton had been “wrongly decided” and rested solely on a statutory interpretation of the Vehicle and Traffic Law that gave a defendant an absolute right to refuse to submit to a blood test “and that this right would be rendered meaningless if comment upon its exercise was permitted” (People v Paddock, 29 NY2d 504, 506, supra; emphasis added). Judge Jasen further said (p 506) that the “right” to refuse to take a blood test was not a “fundamental personal privilege, but, rather, was merely an accommodation to avoid a distasteful struggle to forcibly take blood”. Therefore, since the obvious reason for a refusal to submit to the test is that a person fears its results, “[t]o forbid comment upon such refusal seems unduly restrictive of legislative intent and unnecessarily prevents the use of competent and probative evidence” (People v Paddock, 29 NY2d 504, 506, supra; emphasis added).
Subsequently, in People v De Jesus (42 NY2d 519, 525), the Court of Appeals held that “ordinarily, comment may not be made upon a defendant’s failure to testify or otherwise come forward with evidence, but, once a defendant does so, his or her failure to call an available witness who is under defendant’s control and has information material to the case may be brought to the jurors’ attention for their consideration”. Presumably, the same rule would apply with respect to a refusal to come forward with nontestimonial material evidence solely within a defendant’s control, as in the case at bar.[2]
The state of the law in this area is therefore very unclear. Is the mere introduction of evidence the equivalent of “comment” as Judge Jasen appears to indicate in his concurring opinion in Paddock (supra)! Even if it is, Judge Jasen would allow testimony of a refusal to divulge nontestimonial evidence to be brought out on the People’s direct case. Under the rule in De Jesus (42 NY2d 519, 525, supra), however, might not the introduction of the evidence, or, as here, a simple application by the prosecutor, be error because it “brought to the jurors’ attention for their consideration” the defendant’s refusal to produce evidence prior to his having testified or “otherwise come forward with evidence”? Does a defendant “come forward with evidence” when he calls a witness solely to affect the credibility of another witness? Is this “affirmative proof” as required under People v Terry (83 AD2d 491, 493 [4th Dept 1981])?
*445 It would seem to this court that Judge Jasen’s analysis in People v Paddock (29 NY2d 504, supra) represents a correct statement of the law and that the prosecutor here had a right to make his application in the presence of the jury. It should be stressed however that it would have been better practice if he had moved for pretrial discovery under CPL article 240. The prosecutor here did not realize this and there was obviously no intention to surprise his adversary or put him at a tactical disadvantage. In this case the inference to be drawn by the jury was not speculative. It flowed naturally from the facts which permitted only one conclusion, viz., that the defendant’s left knee was as described by Mr. Spohr (cf. McCormick, Evidence § 272, at 657 [2d ed]).
Since the defense witness Officer Eng was called, and his report introduced, solely to affect the credibility of the complainant on the accuracy and completeness of his description of the robber, the court felt that the safest course to follow was to allow nothing more to be said concerning the exhibition of the knee after the prosecutor’s application was denied. The court, therefore, gave no instruction on the issue and the prosecutor made no mention of it on summation. There was therefore no “comment” on the issue, in the sense in which the word is normally used.
Moreover, even assuming arguendo that the prosecutor’s request was error because it was made before the defendant had “otherwise come forward with evidence” and somehow violated the spirit of De Jesus (49 NY2d 519, supra) and Rodriguez (38 NY2d 95) in that it would be construed as a “comment”, the error must be considered harmless on the facts here. The complaining witness, Mr. Spohr, had already testified and described the marks and discoloration on the defendant’s left knee. There is no doubt that the jury would have drawn an inference against the defendant anyway. Whether the prosecutor made his request or not, the result would have been the same. The defendant would have been convicted just as quickly. He was firmly impaled on the horns of a dilemma as soon as Mr. Spohr testified about his damaged left knee. To say that a jury would not have inferred that if the defendant’s knee was not as described by Mr. Spohr he would not have sat placidly in the courtroom and failed to come forward with evidence showing that Mr. Spohr had identified the wrong man, simply makes no sense.
As stated by Chief Judge Shaw in the 1850 case of Commonwealth v Webster (59 Mass [5 Cush] 295, 316), quoted by Wig-more (8 Wigmore, Evidence § 2273, at 427 [3d ed]): “ ‘When *446 pretty stringent proof of circumstances is produced, tending to support the charge, and it is apparent that the accused is so situated that he could offer evidence of all the facts and circumstances as they existed, and show, if such was the truth, that the suspicious circumstances can be accounted for consistently with innocence, and he fails to offer such proof, the natural conclusion is that the proof, if produced, instead of rebutting would tend to sustain the charge. But this is to be cautiously applied, and only in cases where it is manifest that proofs are in the power of the accused not accessible to the prosecution.’ ” (See also, Graves v United States, 150 US 118, 120-121; Gordon v People, 33 NY 501, 508-509.)
Juries draw such inferences not as a result of formal legal principles or instructions from judges but because common experience leads human beings to believe that when certain facts are established to be true, it can be depended upon as a matter of ordinary everyday reasoning that conclusions can safely be drawn from those facts (see, People ex rel. Woronoff v Motion, 222 NY 456, 464, .465).
A defendant in a criminal case has a 5th Amendment constitutional right not to testify. If he so elects he has a right to an instruction from the court (CPL 300.10) that the jury may draw no inference from his failure to be a witness. This does not mean that he also has a concomitant constitutional right to destroy, suppress or refuse to divulge relevant nontestimonial evidence. To hold that because such a fact is brought to the attention of the jury (or accentuated) during the People’s direct case by a mere application by the prosecutor the jury must be instructed to draw no inference would seem to be illogical. To accede to the defense demand that a mistrial be declared would be to make the “search for the truth” an exercise in the preposterous.
In conclusion it should be pointed out that the main constitutional issue here was a claimed violation of the defendant’s privilege against self-incrimination. If the prosecutor made a request in the presence of the jury for the production of evidence which would require a physical intrusion or a significant invasion of a fundamental right of privacy, a different set of legal concepts and constitutional issues would be involved.
Pertinent in this regard is the recent decision of the United States Supreme Court in Winston v Lee (470 US_,_, 105 S Ct 1611,1616 [Mar. 20,1985]), wherein it was stated that proposed surgery to recover a bullet from the chest of an alleged robber for use as evidence against him implicated “expectations of privacy and security of such magnitude that the intrusion [might] be *447 ‘unreasonable’ even if likely to produce evidence of a crime”. It was held in Winston that the need for the evidence was outweighed by the defendant’s interests in privacy and security and that on the particular facts of that case the proposed surgery would be unreasonable under the 4th Amendment.
In discussing the additional evidence available to the prosecution, Justice Brennan pointed out that there was a spontaneous identification by the victim, apparent proof that the defendant was found a few blocks from the victim’s store shortly after the incident and evidence that the location of the bullet seemed to correlate with the victim’s version of the incident. No mention was made of the fact that the prosecution might be entitled on trial to an inference resulting from the respondent’s refusal to undergo the surgery. Undoubtedly no such inference would be permissible, the respondent having an absolute right to avail himself of his rights under the 4th Amendment and refuse to submit to the operation (People v Thomas, 46 NY2d 100, 108-110, supra).

. Pretrial hearings resulted in the suppression of the lineup identification testimony concerning all three robberies, the lineup and in-court identification of another eyewitness in the case on trial and a large folding knife corresponding to that described by the witness, which was seized from the defendant’s left rear pants pocket at the time of his arrest.

. The People v De Jesus (42 NY2d 519) rule emerged for the first time in People v Rodriguez (38 NY2d 95, 98) (De Jesus extended it to apply to the prosecutor as well as the court). A reading of the cases and authorities cited in Rodriguez in support of the rule discloses, it is respectfully suggested, that the rule was a pronouncement of new law.