OPINION OF THE COURT
David F. Everett, S.
In this miscellaneous proceeding to revoke letters of cotrusteeship issued to Nancy Silberkleit (Nancy) for the trusts under the will of Michael I. Silberkleit, petitioner Samuel J. Levitin (Samuel), Nancy’s cotrustee, moves for an order directing that she submit to a psychiatric examination. Nancy opposes the motion. The motion is granted for the reasons, and to the extent, set forth below.
The decedent and his business partner, Richard Goldwater (R. Goldwater), were engaged in running Archie Comic Publications, Inc. (Archie Comics), and each controlled a 50% interest in the company.
On May 2, 2008, the decedent executed an instrument which provided for a family trust (article seventh) and a marital trust (article ninth). The article seventh trust was to be funded from the decedent’s estate assets up to his “adjusted exemption equivalent,” and its primary purpose was to benefit Nancy. On Nancy’s death, the remainder of this trust was to be distributed 75% to Alexandria Silberkleit (Alexandria), the decedent’s daughter with Nancy, or to Alexandria’s descendants, and 25% was to be divided among Susan Berkley (Susan), Amy Silberkleit (Amy) and David Silberkleit (David), the decedent’s offspring from his first marriage, when Alexandria reaches the age of 40. Susan, the decedent’s eldest child, is 37 years older than Alexandria.
According to court records, the article ninth trust — which was to be funded with the decedent’s residuary estate, with Nancy to receive the income and discretionary invasions of principal — was never funded.
Article seventeenth concerns some of the powers of the fiduciaries. Specifically, subsection (J) (2) states that if there is a dispute between fiduciaries, Nancy’s decision would be controlling.
*910 The instrument also included an in terrorem clause. On May 5, 2008, the decedent executed a codicil to the May 2, 2008 instrument.
The decedent died on August 5, 2008. On August 20, 2008, Nancy, together with Eugene Zuriff (Eugene), a friend of the decedent and the nominated co-executor and cotrustee, jointly filed a petition for probate of the instruments dated May 2, 2008 and May 5, 2008, and citations were served on Susan, Amy and David. On August 25, 2008, preliminary letters testamentary were issued to Nancy and Eugene.
On March 26, 2009, Nancy became a cochief executive officer of Archie Comics. Jonathan Goldwater (Jon Goldwater) replaced R. Goldwater (who had died shortly before the decedent) and became a cochief executive officer. An employment agreement, setting forth, among other things, the duties and responsibilities of Nancy as cochief executive officer of Archie Comics, expired on December 31, 2013.
On October 29, 2009, Susan filed objections to the probate petition, and for nearly four years, the parties pursued discovery and engaged in motion practice.
On July 7, 2011, Archie Comics instituted an action against Nancy in Supreme Court, New York County, under New York County index No. 651859/11. As part of that action, Archie Comics moved, by order to show cause, for a temporary restraining order (TRO) and preliminary injunction prohibiting Nancy from working at the Archie Comics offices, and from contacting most of Archie Comics’s employees and all of Archie Comics’s vendors. On July 11, 2011, the Honorable Shirley Werner Kornreich granted the order to show cause to the extent of temporarily enjoining and restraining Nancy, pending a hearing on the motion, from:
“(a) harassing, yelling at or abusing anyone at the Company’s offices . . . (b) from attending the industry ‘ComCon’ trade show in San Diego, California scheduled for July 20 to 24, 2011 on behalf of the Company in any manner other than educational panels and issues; and (c) from contacting or otherwise communicating with the Company’s vendors for any purpose whatsoever” (notice of motion, exhibit 13).
During the hearing, which was held on August 16, 2011, Justice Kornreich stated, in relevant part:
*911 “As far as I can see, if in fact, Ms. Silberkleit stays, the company will probably be destroyed, which she doesn’t seem to care. But it seems to me this should be a dissolution action, not a case where we are dealing with employment. And if we are only dealing with the employment, then it should be an action to terminate her employment for cause because there is clearly cause here. Unfortunately, even though Ms. Silberkleit really had no real skin in the game in terms of the company, she has managed to be in control, although there is a co-executor and I would suggest he is breaching his fiduciary duty by sitting on the sidelines. That is my suggestion, and it might be brought to the Surrogate’s attention” (id., exhibit 19; tr at 14-15).
The court reserved decision on the motion, but expanded the scope of the TRO, and added specific terms pertaining to Nancy’s conduct and involvement with Archie Comics. Nancy cross-moved for an order, pursuant to CPLR 3211 (a) (7), dismissing the complaint. By decision and order dated November 28, 2011, Justice Kornreich denied Nancy’s cross motion, finding, in relevant part, that Archie Comics had stated a cause of action against Nancy, and that it was entitled to a preliminary injunction “on the ground that [Archie Comics] has demanded and would be entitled to a judgment restraining [Nancy] from the commission or continuance of an act, which, if committed or continued during the pendency of the action, would produce injury to [Archie Comics]” (Archie Comic Pubis, v Silberkleit, 2011 NY Slip Op 34151[U], *6 [Sup Ct, NY County 2011]; notice of motion, exhibit 15 at 10). Justice Kornreich also granted the requested preliminary injunction through the pendency of the action, and expanded the scope of the restrictions enjoining Nancy’s conduct and contacts. Less than a month later, on or about December 22, 2011, Archie Comics moved, by order to show cause, for an order holding Nancy in contempt of court based on her failure and refusal to comply with the court’s November 28, 2011 order. After a hearing on January 24, which continued on February 2, 2012, Justice Kornreich issued an order holding Nancy in civil contempt (see notice of motion, exhibit 18).
Prior to the hearings, Jon Goldwater commenced a separate action against Nancy, by filing a summons and complaint in the office of the New York County Clerk on January 17, 2012, seeking to remove her as a director and cochief executive officer of Archie Comics. Jon Goldwater’s action, under New York *912 County index No. 650133/12, was also assigned to Justice Kornreich.
The salient issues in both New York County actions were then referred to mediation. In accordance with the terms and conditions set forth in the memorandum of understanding dated May 30, 2012, and executed by Archie Comics, Nancy, Samuel and Jon Goldwater, the parties mediated and settled all claims, defenses, cross claims, and counterclaims raised between and among the parties in the New York County actions. The memorandum of understanding clarified, among other things, the duties of Nancy and Samuel with respect to Archie Comics. It was agreed that Samuel would act as the “de facto liaison” between Nancy and “all things Archie,” and that Sam would “review all financial matters on behalf of [Nancy].” Stipulations of discontinuance were executed with respect to the New York County actions.
While the parties were litigating in the Supreme Court, New York County, on October 11, 2011, Archie Comics filed a petition in Westchester County Surrogate’s Court, verified by Jon Goldwater, requesting that the court issue an order modifying Nancy’s preliminary letters to exclude her from participating in Archie Comics, in favor of Eugene as coexecutor. By decision and order dated October 17, 2011, Surrogate Anthony Scarpino, before whom this matter was then pending, declined to exercise authority under SCPA 719, and denied the petition. In his decision, Surrogate Scarpino found that Archie Comics has no interest and no standing in the estate proceeding, and stated, in relevant part, that there was already an action pending in Supreme Court, New York County “regarding Nancy’s conduct in which many of the allegations made mirror those in the petition brought before this court to be entertained.”
On January 12, 2012, coexecutor/cotrustee Eugene commenced a proceeding, here in Surrogate’s Court, against Nancy, seeking an order: (1) revoking her preliminary letters; (2) denying her letters of trusteeship; and (3) revoking her authority to deal with Archie Comics shares.
On January 17, 2012, a settlement was reached among the parties to the proceedings in this court. As part of the settlement: (1) Susan withdrew her objections, and Susan, Amy and David renounced any contingent interest they had in the article seventh trust in exchange for $775,000; (2) Eugene renounced his appointment as coexecutor and cotrustee, withdrew his revocation proceeding against Nancy, and received commissions in *913 the amount of $150,000; and (3) Eugene’s counsel received legal fees in the amount of $142,500. During the allocution of the settlement, Nancy’s attorney advised the court that Samuel (the petitioner in this proceeding) intended to make an application to the court to be appointed cotrustee in place of Eugene.
On May 24, 2012, the instruments executed by decedent were admitted to probate, and letters testamentary were issued to Nancy. As indicated above, the memorandum of understanding was executed approximately one week later, on May 30, 2012.
Thereafter, Samuel petitioned the Surrogate’s Court to be appointed cotrustee, and by order dated July 24, 2012, Surrogate Scarpino directed that letters of cotrusteeship be issued to Samuel and Nancy.
Several months later, on or about December 17, 2012, Samuel petitioned Surrogate’s Court for an order revoking Nancy’s letters. In his petition, Samuel alleges tremendous frustration in working with Nancy, describing her as unprofessional, abusive, and hostile, and stating that she lacks the ability to concentrate and comprehend business matters. Samuel explains that he is forced to take this step because he has a fiduciary duty to the beneficiaries of the trust to preserve the value of Archie Comics.
Six months after the filing of Samuel’s petition, Nancy filed a petition to revoke Samuel’s letters. Issue was joined in both proceedings and the court issued a comprehensive discovery order.
The parties pursued extensive discovery in the two revocation proceedings. A request for modification of the discovery cutoff date was granted on consent.
Currently before the court is Samuel’s motion for an order directing Nancy to submit to a psychiatric examination. It is Samuel’s position that her bizarre behavior with respect to the trust, and her conspicuously erratic and inappropriate interactions with staff at Archie Comics, executives and employees alike, raise significant concerns as to whether she is fit to serve as a fiduciary of the trust. Samuel contends that the issue of Nancy’s mental competency must be addressed because the survival of the trust and of Archie Comics have become precarious due, in large part, to her involvement in both.
Samuel supports his motion with an affidavit from psychiatrist llene Zwirn, M.D., who, at the request of Samuel and his *914 counsel, reviewed recorded audio files and written documents to assist her in determining whether Nancy should be ordered to submit to an independent medical examination (IME). The purpose of the IME would be to assist the court in assessing whether Nancy suffers from a psychiatric condition which impairs her ability to act as a fiduciary. Included in Dr. Zwirn’s review were: a documented investigation stemming from claims lodged against Nancy by Archie Comics employees for sexual harassment and employment discrimination; Nancy’s deposition testimony of July 8 and July 9, 2014; statements from Archie Comics employees pertaining to her behavior at Comic-Con on July 24, 2014; and an incident report relating an incident involving Nancy that occurred at Comic-Con.
In her affidavit dated November 23, 2014, Dr. Zwirn noted that several employees at Archie Comics described her behavior as erratic, impulsive and combative. There were also claims that Nancy was verbally abusive and threatening, used sexually explicit language in the office, often yelled and/or was disruptive at meetings, and that, at times, she had issues with personal hygiene, in that they noted an odor and noticed that she sometimes did not change her clothing for several days. Dr. Zwirn also noted that, due to her disruptive behavior at Comic-Con (the above-referenced incident), she was escorted out of the convention by police.
Dr. Zwirn opined, in relevant part, that
“[t]he record reviewed suggests that [Nancy] has a history of significant interpersonal difficulty at [Archie Comics]. She has been described as impulsive and combative and has been described as having exercised poor judgment and poor impulse control. These are signs suggestive of possible psychiatric illness. If a psychiatric illness impairs [Nancy] to the extent that she is unable to maintain productive interpersonal relationships and is unable to control the impulses which might negatively impact the company, her ability to act as a fiduciary would be called into question. The record thus far reviewed supports the need for a complete psychiatric evaluation to assess [Nancy’s] fitness to act as a fiduciary” (notice of motion, aff of Dr. Zwirn).
Samuel asserts that under CPLR 3121 and SCPA 711 (2) and (8), the court can modify Nancy’s fiduciary’s letters by reason of her “want of understanding,” and because she is “unfit for the execution of [her] office,” and that “Nancy’s mental condi *915 tion has become a legitimate issue in this proceeding.” He also asserts that Nancy has put her mental state in issue by making allegations in a sworn affidavit to the effect that Samuel’s conduct toward her impacts her mental condition.
In opposition to the motion, Nancy contends that there is no provision for a mental examination under the SCPA, and that Samuel has not satisfied the criteria set forth in CPLR 3121 for ordering an IME because she did not place her mental state in issue. Nancy also asserts that the information to be gleaned from such an examination is neither material nor relevant to the controversy because it would not sharpen the issues and would lead to further delay.
Alternatively, Nancy requests that in the event the court orders her to submit to a psychiatric IME, that such IME be performed by a neutral physician, rather than one selected solely by petitioner (see Nancy/respondent’s mem of law, § II at 12-13).
Next, Nancy adamantly denies Samuel’s allegations pertaining to sexual harassment and inappropriate behavior, insisting that the allegations are either fabricated or are based on distorted versions of the facts. Taking the offense, Nancy accuses Samuel of wasting trust assets by funding this litigation through Archie Comics, by siding with Jon Goldwater at the expense of Archie Comics and the trust, and by endeavoring to shut her out of Archie Comics.
It is well settled that a Surrogate, who is charged with ensuring the proper administration of an estate, is authorized under SCPA 719 to remove a fiduciary without a hearing under any of the circumstances set forth in its subdivisions. SCPA 719 (10) expands the situations, set forth in subdivisions (l)-(9), to include situations “[w]here any of the facts provided in [SCPA] 711 are brought to the attention of the court.”
SCPA 711 identifies certain criteria for suspending, modifying or revoking a fiduciary’s letters, or for removing a fiduciary for reasons of disqualification or misconduct. SCPA 711 (2) and (8) are the specific subdivisions advanced by Samuel in support of his petition to revoke Nancy’s letters, and in support of the instant motion. Under SCPA 711 (2), a fiduciary’s letters may be revoked:
“[w]here by reason of [her] having wasted or improperly applied the assets of the estate, or made investments unauthorized by law or otherwise improvidently managed or injured the property *916 committed to [her] charge, including by failing to comply with paragraph (c) of section 8-1.9 of the estates, powers and trusts law, or by reason of other misconduct in the execution of [her] office or dishonesty, drunkenness, improvidence or want of understanding, [she] is unfit for the execution of [her] office.”
SCPA 711 (8) provides for removal in circumstances where a fiduciary: “does not possess the qualifications required of a fiduciary by reason of substance abuse, dishonesty, improvidence, want of understanding, or who is otherwise unfit for the execution of the office.”
Samuel’s motion for an order directing Nancy to submit to an IME is granted for the following reasons and to the extent set forth below.
To make a proper determination as to this issue, the court must review the evidence which is already part of the record, and the evidence which should be made part of the record through proper disclosure. Surrogate’s Court, like any trial court, “is vested with broad discretion to regulate pretrial discovery” (Boutique Fabrice v Bergdorf Goodman, 129 AD2d 529, 530 [1st Dept 1987] [citation omitted]; see Merkos L’Inyonei Chinuch, Inc. v Sharf, 59 AD3d 408, 410 [2d Dept 2009]; Lewis v Hertz Corp., 193 AD2d 470, 470 [1st Dept 1993]), and the court’s “determinations will not be disturbed absent an abuse of that discretion” (Giles v Yi, 105 AD3d 1313, 1315 [4th Dept 2013] [internal quotation marks and citation omitted]).
CPLR 3101 (a) requires “full disclosure of all matter material and necessary in the prosecution or defense of an action, regardless of the burden of proof.” When a party’s mental or physical condition is in controversy in an action, that party may be required, under CPLR 3121 (a), to submit to a medical examination, and/or be required to make all relevant medical records available for inspection (Dillenbeck v Hess, 73 NY2d 278, 286-287 [1989]; Farkas v Orange Regional Med. Ctr., 97 AD3d 720, 721 [2012]). CPLR 3121 (a) provides, in relevant part: “[a]fter commencement of an action in which the mental or physical condition . . . of a party . . . is in controversy, any party may serve notice on another party to submit to a physical [or] mental . . . examination by a designated physician.” However, “[t]he initial burden of proving that a party’s physical [or mental] condition is in controversy is on the party seeking the information and it is only after such an evidentiary *917 showing that discovery may proceed under the statute” (Dillenbeck v Hess, 73 NY2d at 287 [internal quotation marks and citation omitted]). Here, as Samuel is the party seeking a psychiatric IME of Nancy, he has the burden of demonstrating its necessity.
To this end, Samuel asserts Nancy: (1) placed her mental status in controversy by claiming that his (Samuel’s) conduct toward her impacts her mental condition; and (2) has, and continues to, conduct herself in a manner indicative of mental defect, consistently evidencing the fact that she lacks the necessary understanding and fitness to perform as a fiduciary.
A review of the pleadings reveals that, by claiming that Samuel’s conduct toward her impacts her mental condition, Nancy did not intend to place her mental health in controversy. However, the fact that she has not affirmatively placed her mental health in controversy does not end the court’s inquiry, nor does it preclude the court from considering the motion, as the record, which Nancy cannot refute, raises serious questions as to her mental state.
“New York has a vested interest in requiring fiduciaries to comply with orders of the court to ensure the protection of the trust assets and the innocent beneficiaries” (Matter of Harvey [Mayerson], 38 Misc 3d 1205[A], 2012 NY Slip Op 52373[U], *3 [Sur Ct, Nassau County 2012]). Here, Nancy’s demonstrated inability to comply with Justice Kornreich’s orders, which resulted in a finding against her for civil contempt, is of great concern to this court (SCPA 711 [3]). Also troubling are the claims of Archie Comics employees, who are uninterested parties with respect to this estate matter, about Nancy’s inappropriate, erratic and bizarre behaviors in the office. These include complaints about her personal hygiene, specifically her “odor and her unchanged clothing for several days” (Dr. Zwirn aff at 2), and eight written reports detailing her obstreperous behavior at Comic-Con (in direct violation of Justice Kornreich’s restraining order), which resulted in her removal from the convention by security officers, and her being banned from future Comic-Con events (notice of motion, exhibits 44-52).
The purpose of the IME is not to punish Nancy, but to aid the court in determining whether Nancy, as she asserts, is simply being scapegoated with distorted renditions of events for the failings of others, or whether she has or “has not the requisite understanding of the duties and responsibilities that she would be called upon to exercise in administering an estate *918 [of value]” (Matter of Phyfe, 115 Misc 699, 703 [Sur Ct, NY County 1920]). The appointment of a neutral physician to conduct the IME, in accordance with Nancy’s request, is an appropriate means by which to accomplish the stated purpose. Failure by Nancy to submit to such examination may result in an adverse inference being drawn against her (see People v Rumph, 128 Misc 2d 438, 443 [Sup Ct, Kings County 1985], affd 141 AD2d 576 [2d Dept 1988], lv denied 72 NY2d 1049 [1988]; 2 McCormick on Evidence § 264 [7th ed 2013]).
Accordingly, it is ordered that the motion for an order directing Nancy Silberkleit to submit to an independent psychiatric medical examination is granted to the extent that:
1. counsel for both sides may, within 14 days of the date of this order, agree upon a neutral psychiatrist to conduct the independent medical examination for the stated purpose of assisting the Surrogate’s Court in determining Nancy Silberkleit’s fitness to act as a fiduciary, or
2. counsel for each side may submit, within 14 days of this order, for court review and determination of the appointment of a neutral psychiatrist, the names, curriculum vitae, and contact information for three psychiatrists qualified to conduct a complete psychiatric examination of Nancy Silberkleit, for the stated purpose of assisting the Surrogate’s Court in determining her fitness to act as a fiduciary; and it is further ordered that should Nancy Silberkleit agree to submit to a neutral independent psychiatric medical examination, that she execute, within 14 days of selection of the neutral independent medical examination psychiatrist, as stipulated in writing by counsel or ordered by the court, the necessary HIPAA compliant authorization(s) for release to counsel for both sides and the court, of any testing results and reports prepared as part of the independent psychiatric medical examination; and it is further ordered that should Nancy Silberkleit agree to submit to a neutral independent psychiatric medical examination, that she submit to such independent psychiatric medical examination within 60 days of selection by agreement of counsel for both parties or by the court; and it is further ordered that should Nancy Silberkleit agree to submit to a neutral independent psychiatric medical examination, that Nancy Silberkleit’s counsel may accompany her to the examination, but may not participate in, interfere with, or be present in the room during the examination itself; and it is further ordered that in the event Nancy Silberkleit fails or refuses to submit to a neutral *919 independent psychiatric medical examination, that petitioner may seek leave of court to move for an adverse inference to be drawn against her.